**STATE of Minnesota, Respondent,**

v.

**Douglas John WAGNER, Appellant.**

**No. C6–96–552.**

Court of Appeals of Minnesota.

Nov. 5, 1996.

Robert D. Reutter, Gregory, for Appellant.

Hubert H. Humphrey, III, Attorney General, Waldemar B. Senyk, Otter Tail County Attorney, Kurt A. Mortenson, Assistant County Attorney, Fergus Falls, for Respondent.

Considered and decided by HUSPENI, P.J., and AMUNDSON and THOREEN,* JJ.

## OPINION

JOHN F. THOREEN, Judge.

Following a bench trial in Otter Tail County, appellant Douglas John Wagner was found guilty of the misdemeanor offense of leaving decoys in public waters overnight in violation of Minn.Stat. § 97B.811, subd. 3 (1994), and ordered to pay a fine of $50, plus various surcharges and fees, for a total of $85. We affirm.

## FACTS

On October 16, 1995, Conservation Officer Paul Nelson received a complaint on his answering machine that someone was leaving decoys on Vinge Lake after shooting hours. Officer Nelson went to Vinge Lake and observed a large number of decoys on the northeast corner of the lake. The decoys were situated adjacent to private land and located to the east and west of two blinds. Officer Nelson noticed heavy vegetation consisting of cattails and bulrushes sufficient to partially conceal a hunter in the waters near

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the decoys. He did not see anyone hunting at that time.

Between October 21, 1995 and October 27, 1995, Officer Nelson made repeated inspections of the lake, observing the same decoys in the same spot each time. Finally, on October 27, 1995, Officer Nelson noticed two hunters in the blinds. He identified the hunters as appellant and his wife. When questioned, appellant acknowledged the decoys were his. Officer Nelson then charged appellant with violating Minn.Stat. § 97B.811, subd. 3 (1994).

At trial, the parties stipulated that appellant's decoys were in public waters. Appellant admitted to ownership of the decoys and to leaving the decoys in the waters throughout the hunting season. Appellant testified that he had a lease interest with Duane Thompson, the adjacent landowner, allowing him access to Vinge Lake. The land leased by appellant was located on the eastern shore of the lake and consisted of roughly five and one-half acres to the north and south of a small bay. The lease granted appellant permission to enter the property and all the rights for waterfowl purposes up to the shoreline. The other parcels of land surrounding the lake are owned by multiple landowners, and it is agreed that other hunters can access the lake to hunt ducks.

Following the state's case-in-chief, appellant moved for acquittal on the grounds that under civil trespass law, no other hunters could hunt in the area where the decoys were located. The trial court denied appellant's motion and found appellant guilty. The trial court specifically found that the decoys belonged to appellant, were in public waters between sunset and one hour before lawful shooting hours, that in the immediate area of the decoys there was natural vegetation growing in water sufficient to partially conceal a hunter, that there are other private owners of land adjacent to Vinge Lake who could provide hunters access to the public waters of the lake, and that a hunter could hunt in the area where the decoys were situated without committing a trespass. The trial court ordered appellant to pay a $50 fine, plus various surcharges and fees, for a total of $85.

## ISSUES

1. Did the trial court properly interpret Minn.Stat. § 97B.811, subd. 3 (1994)?

2. Did public hunting on public waters in compliance with Chapter 97B constitute a taking of appellant's property rights?

## ANALYSIS

1. Appellant does not dispute the trial court's findings of fact. Rather, appellant challenges the trial court's interpretation of Minn.Stat. § 97B.811, subd. 3 (1994).

Statutory interpretation is a question of law that this court reviews de novo. *State v. Zacher,* 504 N.W.2d 468, 470 (Minn. 1993). When reviewing a statute, it is to be construed according to the legislative intent as evidenced by the language used, the subject matter governed by the statute, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation. *State v. Olson,* 325 N.W.2d 13, 19 (Minn.1982); Minn.Stat. § 645.16. Penal statutes are to be strictly construed with all reasonable doubts concerning legislative intent to be resolved in favor of the defendant. *Id.* However, "this does not require the court assign the narrowest possible interpretation to the statute." *State v. Peng,* 524 N.W.2d 21, 23 (Minn.App. 1994). The statute is to be construed in a manner giving effect to all of its provisions and a construction that would give no effect to the statute is to be avoided. *Id.* (citing *Allison v. Sherburne Country Mobile Home Park,* 475 N.W.2d 501, 504 (Minn.App.1991)); Minn.Stat. § 645.16.

In Minnesota, an individual may hunt waterfowl in open water provided the individual is within a natural growth of vegetation sufficient to partially conceal a hunter. Minn.Stat. § 97B.805, subd. 1 (1994). The use of decoys and the erection of blinds to take waterfowl is governed by Minn.Stat. § 97B.811, subd. 3. This section provides, in relevant part, that

a person may not leave decoys in public waters between sunset and one hour before lawful shooting hours unless:

(1) the decoys are in waters adjacent to private land under the control of the hunter; and

(2) there is not natural vegetation growing in water sufficient to partially conceal a hunter.

As Officer Nelson testified, the purpose of this provision is to prevent an individual from preempting a hunting spot on public waters because such waters are open to all who have access on a first-come, first-serve basis.

Here, it is undisputed that the decoys in question were in waters adjacent to private land under appellant's control. Appellant argues that no other person could hunt on the public waters of Vinge Lake near his decoys because to do so would constitute a trespass on the land he was leasing. According to appellant, 60 to 75 percent of the ducks come over Vinge Lake from the northeast corner of the lake. Appellant's blinds and decoys, along with the land he was leasing from Thompson, are located on the east-northeast shore of the lake. Appellant argues that to hunt ducks from where his decoys were located, another hunter would have to shoot over the land he was leasing with the spent shot or dead birds falling on his land. Appellant contends this would constitute a trespass and that the legislature did not intend such a result. Thus, according to appellant, he did not violate Minn.Stat. § 97B.811, subd. 3, because there could be no "hunter" in the natural vegetation growing near his decoys.

Appellant relies primarily on the Minnesota Supreme Court's decision in *Whittaker v. Stangvick*, 100 Minn. 386, 111 N.W. 295 (1907). In that case, plaintiffs sought to enjoin defendants from erecting duck blinds in the water in front of a strip of land owned by plaintiffs and from hunting or shooting ducks from the strip or from shooting over it. The defendants had previously been restrained by court order from entering onto this strip to hunt or shoot ducks. At trial, defendants argued that the falling shot or even the dead ducks were not sufficient to constitute a trespass onto plaintiff's property. The supreme court disagreed, holding that a direct invasion of another's property without permission is actionable per se without proof of actual damages. *Id.* at 388–89, 111 N.W.

at 296. The court stated that in cases of unpermitted invasion of another's premises, "it is immaterial whether the quantum of harm suffered be great, little, or unappreciable." *Id.* The supreme court, citing *Lamprey v. Danz*, 86 Minn. 317, 90 N.W. 578 (1902), ruled that the defendants' right to properly use navigable lakes did not give them any more right to shoot over plaintiffs' land than a neighbor would have from his own premises. *Id.* at 391, 111 N.W. at 297.

In *Lamprey*, another duck pass case, the trial court enjoined the defendant from shooting ducks over the plaintiff's land. Both plaintiff and defendant owned land that was covered by a portion of the waters of Howard Lake. Defendant would hunt ducks from a partially submerged and concealed boat permanently moored to the portion of the lake bed he owned. However, his boat was placed in such proximity to plaintiff's land that defendant's spent shot and any dead ducks would fall onto the water covering plaintiff's portion of the lake bed. The supreme court affirmed the trial court, holding that because plaintiff's ownership of the land underneath the water of Howard Lake was absolute and not qualified by any right of the state in trust for the public, he had the exclusive right to hunt and fish on the waters above his property. *Lamprey*, 86 Minn. at 323, 90 N.W. at 580.

However, the supreme court expressly overruled *Lamprey* in *Johnson v. Seifert*, 257 Minn. 159, 168, 100 N.W.2d 689, 696 (1960). The supreme court held that an abutting or riparian owner of a lake has a right to make use of the entire surface of the lake provided that such use is reasonable and does not unduly interfere with the similar right of other abutting owners, regardless of the navigable or public character of the lake and regardless of the ownership of the bed thereof. *Id.* at 168–69, 100 N.W.2d at 696–97.

■ It is firmly established that "riparian rights are subordinate to the rights of the public and subject to reasonable control and regulation by the state." *State v. Kuluvar,* 266 Minn. 408, 418, 123 N.W.2d 699, 706 (1963). Minn.Stat. § 97B.811, subd. 3, regulates the use of decoys so that a hunter may not, by leaving decoys out overnight,

preempt a hunting spot on public waters, thereby insuring equal access to all who have access to the lake. It is undisputed that the waters of Vinge Lake are public and that other hunters have access to the lake to hunt waterfowl. As the supreme court stated in *Kuluvar,*

> When it is established that the public has access to waters capable of substantial beneficial use by all who so desire, the statute directs that the state fulfill its trusteeship over such waters by protecting against interference by anyone, including those who assert the common-law rights of a riparian owner.

*Kuluvar,* 266 Minn. at 418, 123 N.W.2d at 706. Although the statute in *Kuluvar* concerned the interference of public waters subject to state control, the statement applies equally well to the present case.

■ Contrary to appellant's assertions, Minn.Stat. § 97B.811, subd. 3, does not preclude him from preventing a trespass to his leased land. It simply prohibits him from leaving his decoys overnight on the public waters of Vinge Lake in a spot were there is natural vegetation sufficient to partially conceal a hunter. Just as another hunter may not unlawfully impair appellant's rights to his leased property, appellant may not impair the rights of the public to hunt on the waters of Vinge Lake. *See Kuluvar,* 266 Minn. at 418, 123 N.W.2d at 706 (the public's natural right to fish, hunt, swim, navigate, and otherwise enjoy public waters shall not be subordinated to the rights of private riparian owners).

Even assuming appellant's position is correct with regard to the issue of trespass, it is agreed that other hunters can lawfully gain access to Vinge Lake to hunt ducks. It is also undisputed, as Officer Nelson testified, that it is possible for a hunter to shoot in an easterly and westerly direction, instead of only to the north and the south over appellant's leased land. If a hunter were to shoot in a westerly direction, the spent shot would fall into the open water of the lake. Thus, even assuming that no other hunter could shoot over appellant's land to the north, east, and south because to do so would constitute a trespass, another hunter shooting in a west-

erly direction could lawfully hunt ducks from where appellant's decoys were located without causing a trespass to appellant's land. As such, another hunter could lawfully hunt in the vegetation in the immediate area of appellant's decoys.

We also note, as did the trial court, that since the decision in *Whittaker,* the law of trespass in Minnesota has been modified to allow a hunter, in certain instances, to retrieve wounded game from another's property without trespassing. Specifically, Minn. Stat. § 97B.001, subd. 5, provides that a hunter on foot may, without the owner's permission, retrieve wounded game from agricultural land that is not posted according to statute. We do not agree with appellant that the provisions contained in Minn.Stat. § 97B.001, subd. 7, limiting the taking of a wild animal within certain distances from various structures or buildings occupied by humans or livestock, strengthen the trespass law of *Whittaker.* Nothing in this provision prohibits shooting or hunting on public water adjacent to private land. Presumably, had the legislature intended to place further limitations on taking waterfowl in public waters, the limitations would be codified in Chapter 97B. The legislature did not so provide, and we cannot now provide that which the legislature has purposely omitted or inadvertently overlooked. *See Northland Country Club v. Commissioner of Taxation,* 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976) (when construing statutes, the court "cannot supply that which the legislature purposely omits or inadvertently overlooks").

Accordingly, we conclude that the trial court did not err in construing Minn.Stat. § 97B.811, subd. 3.

■ 2. Pursuant to Minn.Stat. § 97B.811, subd. 3, an individual may leave his decoys out overnight if his decoys are located in waters adjacent to private land under the control of the individual and the decoys are located in water where there is not sufficient vegetation to partially conceal a hunter. Appellant argues that under a strict interpretation of this language, he did not violate the law because his decoys were not

located "in" the vegetation and they were thus in "open" water. We disagree.

Here, the trial court found, and appellant testified, that there was natural vegetation growing in the water sufficient to partially conceal a hunter in the immediate area of his decoys. This is sufficient under the statute. As respondent notes, Minn.Stat. § 97B.811, subd. 3(2), applies to the partial concealment of the hunter, not the decoys. A plain and ordinary reading of this provision, in light of the statute's purpose and subject matter, simply requires that the decoys be located *adjacent* to the natural vegetation, not necessarily in the vegetation. Such an interpretation is consistent with the statute's overall language. *See* Minn.Stat. § 97B.811, subd. 3(1) ("the decoys are in waters *adjacent* to private land under the control of the hunter").

Under appellant's interpretation of the statute, a violation could only occur if a hunter placed his decoys in the surrounding vegetation. Such an interpretation would not only lead to an absurd and unreasonable result, but would render the statute ineffective. It is axiomatic that such an interpretation is to be avoided. *See* Minn.Stat. § 645.17 (the legislature does not intend a result that is absurd, impossible of execution, or unreasonable). We conclude, therefore, that appellant's interpretation of Minn.Stat. § 97B.811, subd. 3, is contrary to the plain and ordinary meaning of the statute's language and would lead to an absurd result.

3. On appeal, appellant argues that the trial court's verdict constitutes an unconstitutional "taking" of a property right without just compensation because it deprives him of his right to prevent trespass to the property under his control. It is well-settled that issues first raised on appeal and not presented to the trial court may not be considered on appeal. *State v. Merrill*, 274 N.W.2d 99, 109 (Minn.1978). This is so even where constitutional issues are involved. *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989). Here, appellant failed to present this issue to the trial court. Consequently, it is not properly before this court and may not now be considered on appeal.

## DECISION

The trial court did not err in its interpretation of Minn.Stat. § 97B.811, subd. 3. The purpose of the statute is to prevent an individual from preempting a hunting spot on public waters. While an individual has the right to use and enjoy the property under his control, that individual's use must be reasonable and must not unduly interfere with the rights of other abutting landowners and the public to the use and enjoyment of public waters.

**Affirmed.**